IN THE
UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

SHANNON R.,
     Plaintiff,

v.                                                             Case No. 4:22-cv-04095-SLD-JEH

COMMISSIONER OF SOCIAL
SECURITY,
     Defendant.

**Report and Recommendation**

Now before the Court is the Plaintiff's Brief (Doc. 7) and the Defendant's Brief (Doc. 10). This matter has been referred for a report and recommendation. For the reasons stated herein, the Court recommends the Plaintiff's request to reverse and remand the unfavorable decision of the Defendant, Kilolo Kijakazi, Acting Commissioner of Social Security, be denied.[1]

**I**

Shannon R. filed an application for disability insurance benefits (DIB) on April 2, 2020, alleging disability beginning on March 19, 2020. Her DIB claim was denied initially on October 27, 2020 and upon reconsideration on February 3, 2021. Shannon filed a request for hearing concerning her application which was held on June 8, 2021 before the Honorable John M. Wood (ALJ). At the hearing, Shannon was represented by an attorney, and Shannon and a vocational expert testified. Following the hearing, Shannon's claim was denied on September 30, 2021. Her request for review by the Appeals Council was denied on May 5, 2022, making the

---

[1] References to the pages within the Administrative Record will be identified by AR [page number]. The Administrative Record appears at (Doc. 5) on the docket.

ALJ's Decision the final decision of the Commissioner.  Shannon timely filed the instant civil action seeking review of the ALJ's Decision on June 16, 2022.

## II

Shannon argues the ALJ's finding of residual functional capacity is affected by error and is not supported by substantial evidence.

## III

The Court's function on review is not to try the case de novo or to supplant the ALJ's findings with the Court's own assessment of the evidence.  *See Schmidt v. Apfel*, 201 F.3d 970, 972 (7th Cir. 2000); *Pugh v. Bowen*, 870 F.2d 1271 (7th Cir. 1989).  Indeed, "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."  42 U.S.C. § 405(g).  Although great deference is afforded to the determination made by the ALJ, the Court does not "merely rubber stamp the ALJ's decision."  *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002).  The Court's function is to determine whether the ALJ's findings were supported by substantial evidence and whether the proper legal standards were applied.  *Delgado v. Bowen*, 782 F.2d 79, 82 (7th Cir. 1986).  Substantial evidence is defined as such relevant evidence as a reasonable mind might accept as adequate to support the decision.  *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Henderson v. Apfel*, 179 F.3d 507, 512 (7th Cir. 1999).

In order to qualify for disability insurance benefits, an individual must show that his inability to work is medical in nature and that he is totally disabled.  Economic conditions, personal factors, financial considerations, and attitudes of the employer are irrelevant in determining whether a plaintiff is eligible for disability.  *See* 20 C.F.R. § 404.1566.  The establishment of disability under the Act is a two-step process.

First, the plaintiff must be suffering from a medically determinable physical or mental impairment, or combination of impairments, which can be expected to

result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 423(d)(1)(A). Second, there must be a factual determination that the impairment renders the plaintiff unable to engage in any substantial gainful employment. *McNeil v. Califano*, 614 F.2d 142, 143 (7th Cir. 1980). The factual determination is made by using a five-step test. *See* 20 C.F.R. § 404.1520. In the following order, the ALJ must evaluate whether the claimant:

1) is performing substantial gainful activity;

2) suffers from an impairment that is severe and meets a durational requirement, or suffers from a combination of impairments that is severe and meets the durational requirement;

3) suffers from an impairment which meets or equals any impairment listed in the appendix and which meets the duration requirement;

4) is unable to perform her past relevant work which includes an assessment of the claimant's residual functional capacity; and

5) is unable to perform any other work existing in significant numbers in the national economy.

*Id.* An affirmative answer at Steps Three or Five leads to a finding that the plaintiff is disabled. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 352 (7th Cir. 2005).

The plaintiff has the burdens of production and persuasion on Steps One through Four. *Id.* However, once the plaintiff shows an inability to perform past work, the burden shifts to the Commissioner to show ability to engage in some other type of substantial gainful employment. *Weatherbee v. Astrue*, 649 F.3d 565, 569 (7th Cir. 2011).

In the instant case, Shannon claims error on the ALJ's part at Step Four.

**A**

At Step One, the ALJ determined Shannon had not engaged in substantial gainful activity since March 19, 2020, the alleged onset date.  AR 20.  At Step Two, the ALJ determined Shannon had the following severe impairments:  rheumatoid arthritis (RA); fibromyalgia; and obesity.  *Id.*  At Step Three, the ALJ determined Shannon did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments.  AR 23.  At Step Four, the ALJ made the following residual functional capacity (RFC) finding:

> [T]he claimant has the [RFC] to perform sedentary work as defined in 20 CFR § 404.1567(a) except no climbing of ladders, ropes, or scaffolds; no more than occasional climbing of ramps and stairs, balancing, stooping, kneeling, crouching, and crawling; need to avoid environmental hazards such as unprotected heights and dangerous machinery; and no more than frequent reaching, handling, and fingering.

AR 26.  The ALJ found Shannon was capable of performing her past relevant work as an insurance clerk and receptionist.  AR 38.  Thus, the ALJ concluded Shannon had not been under a disability from March 19, 2020 through the date of the Decision, September 30, 2021.  AR 39.

**B**

Shannon argues the ALJ did not properly consider her severe medically determinable impairment of fibromyalgia.  Specifically, she argues the ALJ erred in not assessing the effects of fibromyalgia in assessing the use of her hands, failed to consider the combined effects of fibromyalgia along with RA and obesity in assessing hand function, and erred by failing to discuss why he would ignore fibromyalgia as a source of hand impairment after finding that fibromyalgia was medically determinable, severe, and actively symptomatic.  Shannon thus says the ALJ's RFC finding which limited her to a frequent ability to use her hands is not

4

supported by substantial evidence. The Commissioner counters the ALJ's Decision is supported by substantial evidence, the ALJ reasonably found that Shannon was not as limited as alleged, and the ALJ reasonably considered Shannon's fibromyalgia.

Shannon argues the following, in particular, reveal the ALJ's errors with regard to fibromyalgia: the ALJ's adoption of State Agency consultant James L. Greco, M.D.'s opinion that Shannon would be able to handle and finger frequently, but not constantly; and the ALJ's assessment of Shannon's use of her hands which she says was done separately from the balance of his RFC finding. In his Decision, following ample discussion of the medical record, the ALJ discussed Dr. Greco's February 1, 2021 opinion which was rendered at the reconsideration stage. Dr. Greco opined that Shannon could frequently handle and finger bilaterally. AR 89. In the form where his opinion appeared, Dr. Greco offered the following explanation for Shannon's manipulative limitations: "Due to RA involving both hands, claimant would not be able to perform constant handling or fingering with either hand. [Handling/fingering] is limited to frequently, bilaterally." *Id*. Under his additional explanation for his RFC opinion, Dr. Greco cited Shannon's allegations of disability due to RA and fibromyalgia (among other things), Shannon's medical records which provided she had tenderness across all PIP joints[2] and MCP joints[3] bilaterally but did not have synovitis[4], and Shannon's September 19, 2020 consultative examination which yielded normal results as to

---

[2] "The PIP joint is the first joint of the finger and is located between the first two bones of the finger." American Society for the Surgery of the Hand, https://www.assh.org/handcare/safety/joints (last visited Oct. 10, 2023).
[3] "The MP joint is where the hand bone called the metacarpal meets the finger bones called the phalanges." American Society of the Surgery of the Hand, https://www.assh.org/handcare/safety/joints (last visited Oct. 10, 2023).
[4] "Inflammation of a synovial membrane. Inflammation may be the result of an aseptic wound, rheumatologic diseases, infections, a subcutaneous injury (contusion or sprain), irritation produced by damaged cartilage, overuse, or trauma." Taber's Online, https://www.tabers.com/tabersonline/view/Tabers-Dictionary/729947/all/synovitis?q=synovitis (last visited Oct. 10, 2023).

her hands and listed RA and fibromyalgia as diagnoses.  AR 90.  Dr. Greco found

Shannon's allegations "partially consistent" as the alleged severity of her

impairments was not adequately supported by the medical evidence.  AR 91.  Per

Shannon, the ALJ's reliance on Dr. Greco's opinions does not relieve the ALJ of the

duty to consider fibromyalgia as Dr. Greco himself considered only RA and not

the former in assessing Shannon's hand functioning.

> As for the ALJ's RFC finding, the ALJ explained:

> [T]he claimant has a combination of physical impairments that are interrelated and potentially exacerbate each other.  Giving the claimant all reasonable benefit of the doubt regarding her allegations of pain, fatigue, and limited exertional abilities and considering the combination of non-severe and severe physical impairments, the undersigned finds it is reasonable to restrict the claimant to the exertional demands of sedentary work . . . Giving the claimant all reasonable benefit of the doubt regarding her allegations of difficulty with manipulative functioning, but noting the examination and radiographic imaging findings that suggest no significant active [RA] involving the hands, as well as the normal manipulative abilities demonstrated at the consultative examination, the undersigned agrees with and adopts the state agency restriction of no more than frequent handling and fingering, but also has given the claimant some greater benefit of the doubt and restricted reaching to no more than frequently as well.

AR 38.  Per Shannon, the ALJ assessed Shannon's use of her hands due solely to

RA given his reasoning for the RFC he assessed.  The Court must, of course,

consider these two portions of the ALJ's Decision (and Shannon's challenges to

them) in the context of the Decision as a whole.  *Rice v. Barnhart*, 384 F.3d 363, 369,

370 n.5 (7th Cir. 2004) (providing it is proper to read an ALJ's decision with

common sense and as a whole).

**1**

The Commissioner argues it is notable that the ALJ did not overlook evidence favorable to Shannon and addressed evidence suggestive of significant functional limitations.  The Commissioner argues further, it is abundantly clear from the many pages the ALJ devoted to Shannon's physical conditions that he was well-acquainted with the evidence in this case and that, as a result, his RFC assessment embodied his reasoned consideration of Shannon's symptoms.  The Court agrees.  The ALJ both assessed Shannon's RFC based on all the relevant evidence of record pursuant to 20 C.F.R. § 404.1545 and properly evaluated her symptoms pursuant to 20 C.F.R. § 404.1529.  *See* 20 C.F.R. § 404.1545(a)(1) ("We will assess your residual functional capacity based on all the relevant evidence in your case record"); 20 C.F.R. § 404.1529(c)(2)-(3) (providing that the intensity and persistence of a claimant's symptoms are evaluated by considering the objective medical evidence and other evidence including activities of daily living, the location and intensity of pain or other symptoms, medication taken, and any measures used to relieve the symptoms).

For example, the ALJ quoted Shannon's reports of daily suffering, extreme stiffness and pain, and debilitating fatigue.  In fact, he several times throughout the Decision mentioned Shannon's complaints of pain and fatigue as well as her fear of ultimately being wheelchair-bound.  He repeated her representations that her hands were constantly in a closed-fist position, that she sometimes needed help with self-care and cooking due to her hands, and that she experienced numbness, swelling, and paresthesia in her hands.  He considered the medication Shannon took at various times for RA and the medication's efficacy and side effects.

The ALJ considered Shannon's rheumatology records dated December 2019, January 2020, April 2020, October 7, 2020, October 14, 2020, November 2020, and

January 2021 as well as Shannon's primary care physician records dated November 2019, November 2020, January 2021, and April 2021. Shannon variably reported she was doing fairly well except for chronic pain due to arthritis, she had moderate joint pain in the fingers and wrists, she exercised, she had quite a bit of pain diffusely, and she reported 5/10 pain. Upon establishing with a new rheumatologist, Shannon stated that Remicade (RA infusion medication) was the only thing that helped her RA and on Remicade, her CRP[5] normalized, she had very little morning stiffness, she slept well, she had virtually no pain, and she was very active. Physical examinations at those times revealed normal extremity strength and intact sensation, no joint synovitis, normal reflexes, and normal range of motion. Shannon was repeatedly alert and in no acute distress during examinations. The ALJ also noted when examinations revealed Shannon had tenderness across all PIP joints and MCP joints bilaterally and when most of or all of her 18 fibromyalgia trigger/tender points tested positive. Rheumatology records indicated Shannon's inflammatory markers were low, her sedimentation rate and CRP were normal, and she had a negative rheumatoid factor, anti-CCP antibody[6], and ANA[7].

During her September 2020 consultative physical examination, Shannon complained of 10/10 pain in her joints but had 5/5 grip strength of the hands, displayed normal ability to grasp and manipulate objects, had 5/5 motor strength in the upper and lower extremities, and was able to fully extend the hands, make fists, and appose the fingers. She stated at that time she had no problem using

---

[5] C-reactive protein. "The level of CRP increases when there's inflammation in the body." Mayo Clinic, https://www.mayoclinic.org/tests-procedures/c-reactive-protein-test/about/pac-20385228 (last visited Oct. 10, 2023).

[6] "An antibody frequently found in the serum of patients with [RA]." Taber's Online, https://www.tabers.com/tabersonline/view/Tabers-Dictionary/750957/all/antibody#6 (last visited Oct. 10, 2023).

[7] Antinuclear antibody. "Tests for ANAs are used in the diagnosis and management of autoimmune diseases." Taber's Online, https://www.tabers.com/tabersonline/view/Tabers-Dictionary/750957/all/antibody?q=antibody+antinuclear (last visited Oct. 10, 2023).

buttons or zippers, could open a door with a doorknob, could open a jar, and could pick up a pen or coin.  14 of 18 fibromyalgia trigger points were positive.  Shannon was not in acute distress, she was alert and oriented, and there were no signs of depression, agitation, irritability, or anxiety.

The ALJ, in not finding compelling evidence to support the degree of limitation Shannon alleged, explained:

> The undersigned notes that [RA] and fibromyalgia are conditions that are known to wax and wane.  Therefore, how the claimant is doing during a particular medical visit or what positive and negative findings are observed at a particular examination *might not be* an accurate reflection of how the claimant feels and functions on a regular basis, especially if examinations occur weeks or months apart.  However, there are some rather significant discrepancies between the claimant's statements on her disability paperwork and the medical records, which suggest that the claimant is portraying her medical conditions and functional limitations as being more severe than objective evidence can support.

AR 36 (emphasis added).  The ALJ cited discrepancies between Shannon's own statements as to how she felt on Remicade, her report of significant symptoms at a time she had been off medication for months, and her erroneous representation that her inflammatory markers were "very elevated" when she saw her new rheumatologist.  Citing the rheumatologist's statement that he did not feel Shannon's problems of chronic diffuse pain, fatigue, and insomnia were due to active RA, the ALJ found that treatment note was not reflective of progressive or worsening RA (Shannon having reported the doctor said her condition was progressing).  While reasoning such evidence suggested Shannon's RA was "not particularly symptomatic," the ALJ nevertheless determined 18/18 fibromyalgia trigger points suggested Shannon's fibromyalgia was problematic at that time. The ALJ stated succinctly that "obesity; tenderness in the joints of the hands; and

positive fibromyalgia tender points [are] the only consistent 'positive' findings."

AR 38.  He then summed it all up:

> [W]hile objective findings upon examination are generally not particularly impressive, the claimant has routinely complained of pain and fatigue, symptoms that are not easily "measured" by a clinical examination, and there are repeated examinations where most or all fibromyalgia tender/trigger points are positive, indicating fibromyalgia is active and symptomatic, even if [RA] does not appear to be particularly active.  Moreover, as noted earlier, [RA] and fibromyalgia are conditions that are prone to wax and wane.

AR 38.  From there, the ALJ restricted Shannon to sedentary work with no more than frequent handling, fingering, and reaching.

The Decision read as a whole accordingly shows the ALJ considered the combined effects of Shannon's severe impairments, connected the dots between evidence and conclusions, and did not ignore lines of contrary evidence, all as he was required to do.  *See* 20 C.F.R. § 404.1523(c) ("In determining whether your physical or mental impairment or impairments are of a sufficient medical severity that such impairment or impairments could be the basis of eligibility under the law, we will consider the combined effect of all of your impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity"); *Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993) (stating that an ALJ must "sufficiently articulate his assessment of the evidence to assure us that the ALJ considered the important evidence . . . and to enable us to trace the path of the ALJ's reasoning"); *and Golembiewski v. Barnhart*, 322 F.3d 912, 917 (7th Cir. 2003) (reiterating that an ALJ "may not ignore an entire line of evidence that is contrary to the ruling").  Certainly, the ALJ provided separate explanations for why he limited Shannon to sedentary work generally and no more than frequent handling, fingering, and reaching specifically.  But placed in context, that separation logically followed from the evidence of record.  *See Roddy v. Astrue*, 705

F.3d 631, 638 (7th Cir. 2013) (stating that an ALJ is required to provide an accurate and logical bridge between the evidence and his conclusions). Rheumatology records revealed it was the doctors and Shannon herself, who paired her hand complaints with her RA diagnosis. *See*, *e.g.*, AR 228, 235 (complaining in her June 2020 Function Report of severe RA and detailing that her hands are constantly in the closed-fist position and that she is in constant pain); AR 258 (stating in her November 2020 Disability Report that she has elevated inflammatory markers, her hands are extremely swollen and always closed-fisted, and that her new rheumatologist thought her RA was progressing); AR 490 (including rheumatologist's "Assessment" of RA without rheumatoid factor of multiple sites, and under "Impression," notation of Shannon's RA diagnosis, notation that Shannon "constantly has hands half closed," and notation of comorbid conditions to include fibromyalgia); AR 558-59 (consultative examiner detailing Shannon complained of hand pain in the context of RA and of pain all over in the context of fibromyalgia); AR 561 (consultative examiner providing "Impression" of RA "with hands [sic] feet, hips and back involvement" as well as fibromyalgia without detailing what was involved with that problem); *and* AR 581 (different rheumatologist noting Shannon's history of seronegative RA in his "Plan," and, after repeating Shannon's statement that Remicade was the only thing that helped her hands, stating he would like her to go back on Remicade and to use paraffin hand wax and Epsom salt hand baths). It was Shannon's own rheumatologist who a handful of times noted after finding hand tenderness that "[t]here is no synovitis, interestingly." AR 580; AR 698; AR 1138. There is no indication the ALJ in fact excluded Shannon's symptoms of fibromyalgia from his consideration of her manipulative abilities. *See Fisher v. Bowen*, 869 F.2d 1055, 1057 (7th Cir. 1989) ("No principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might

lead to a different result"). Nor could he realistically have done so given the broad range of evidence he explicitly confronted. Shannon takes issue with the ALJ's alleged erroneous reliance on a single consultative examination after recognizing the waxing and waning nature of fibromyalgia. But, as detailed above, the ALJ cited discrepancies between Shannon's statements, and the medical records over the course of a year and a half which revealed that the consultative examination findings were not merely a fluke. Whether Shannon's complaints of pain, cramping, and limited use of her hands were considered symptoms of "fibromyalgia" or symptoms of "RA," the symptoms were considered all the same. *See* AR 38 (ALJ stating in his Decision that "the claimant has a combination of physical ailments that are interrelated and potentially exacerbate each other").

Shannon argues there is nothing in the record to indicate that fibromyalgia cannot be a source of hand impairment. The Commissioner makes valid points in this regard: whatever the overall impact of Shannon's positive trigger points, they did not prevent her from exhibiting the cited normal findings in her hands and arms, and it is ultimately irrelevant how particular conditions might be labeled in an ALJ decision because what matters is that the RFC assessment reasonably takes into consideration all of the claimant's work-related functional limitations. *See Gentle v. Barnhart*, 430 F.3d 865, 868 (7th Cir. 2005) ("Conditions must not be confused with disabilities"). The ALJ did not err in his assessment or articulation of Shannon's RFC. *Jarnutowski v. Kijakazi*, 48 F.4th 769, 774 (7th Cir. 2022) ("Essentially, an ALJ's RFC analysis must say enough to enable review of whether the ALJ considered the totality of a claimant's limitations") (internal quotations omitted). He relied on substantial evidence of record in formulating the RFC, and the Court would have to assign different weight to the evidence to find otherwise. *See Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) ("substantial evidence . . . means – and means only – such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion"); *Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004) (explaining that in reviewing an ALJ's decision, the court cannot reweigh evidence, resolve conflicts in the record, decide questions of credibility, or otherwise substitute its own judgment for that of the Commissioner).

**2**

Shannon argues Dr. Greco considered only RA and not fibromyalgia in assessing her hand functioning.  The foregoing does away with her challenge to the ALJ's reliance on State Agency Dr. Greco's opinion as it illustrates that the ALJ based his RFC assessment on the combination of all of Shannon's impairments.  In any event, the Court is not tasked with evaluating whether Dr. Greco's opinion satisfies the substantial evidence standard or articulation requirements imposed on an ALJ's decision.  Apparent from the form Dr. Greco completed is the fact that he was aware of Shannon's contention she suffered from RA and fibromyalgia, that in applying for reconsideration Shannon stated her hands were extremely swollen and closed-fisted, that Shannon had 18/18 fibromyalgia tender points in November 2020, that Shannon complained of pain as her symptom, that she had tenderness across all PIP joints and MCP joints, and that she did not have synovitis.  Dr. Greco's stated reliance on evidence of Shannon's RA in assessing manipulative limitations shows he found that evidence warranted the imposed limitations; his express reliance on one impairment does not preclude that he considered another impairment as well.  Indeed, Dr. Greco also noted that "[p]ain was taken into account in this RFC assessment." *Id.*  Throughout the record, when Shannon discussed her fibromyalgia, she discussed the pain it caused.  Finally, the ALJ went one step further than Dr. Greco and restricted Shannon to frequent handling, fingering, *and reaching*.  That simple addition reveals the ALJ critically reviewed both Dr. Greco's opinion and the record evidence as a whole.  Remand is not warranted. *See Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014) ("A

reversal and remand may be required . . . if the ALJ committed an error of law . . . or if the ALJ based the decision on serious factual mistakes or omissions").

<strong>IV</strong>

For the reasons set forth above, it is recommended that:   1) the Commissioner's decision denying the Plaintiff's application for disability insurance benefits be affirmed; 2) the Clerk of Court be directed to enter judgment as follows: "IT IS ORDERED AND ADJUDGED that the decision of the Defendant, Kilolo Kijakazi, Acting Commissioner of Social Security, denying benefits to the Plaintiff, Shannon R., is AFFIRMED."; and 3) this matter be terminated.

The parties are advised that any objection to this Report and Recommendation must be filed in writing with the Clerk within fourteen (14) days after service of this Report and Recommendation.  FED. R. CIV. P. 72(b)(2); 28 U.S.C. § 636(b)(1).  Failure to object will constitute a waiver of objections on appeal. *Johnson v. Zema Systems Corp.*, 170 F.3d 734, 739 (7th Cir. 1999); *Lorentzen v. Anderson Pest Control*, 64 F.3d 327, 330 (7th Cir. 1995).

*It is so recommended.*

Entered on October 12, 2023.

s/Jonathan E. Hawley
U.S. MAGISTRATE JUDGE